IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) Criminal No. 4:20-cr-188-10 |
| v. | ) |
| | ) GOVERNMENT'S |
| JERRON TANDRE JOHNSON, | ) SENTENCING MEMORANDUM |
| also known as "Cash," | ) |
| | ) |
| Defendant. | ) |
| | ) |

Defendant possessed two guns at his house, along with an extended magazine, within months of his release from prison. He was also selling crack cocaine. Defendant has numerous felony convictions, most dealing with his repeated possession of guns. The Court should sentence him to 77 months in prison.

I.  **PROCEDURAL BACKGROUND**

Defendant pleaded guilty to being a felon in possession of a firearm, in violation of Title 18, United States Code, Section 922(g)(1). Presentence Investigation Report, ECF No. 775, ¶ 6 (hereinafter "PSR"). Pursuant to the parties' plea agreement, the government will move to dismiss Count 1 at the time of sentencing. *Id.* ¶ 7. Defendant also agreed to forfeiture of the firearm and ammunition identified in the Superseding Indictment.

There are several outstanding objections to the PSR. In support, the government attaches eight sentencing exhibits: four transcripts of intercepted calls and the supporting audio. The government also anticipates the testimony of a law

enforcement officer to prove the disputed enhancement and corresponding PSR paragraphs, and to present evidence as to the § 3553(a) sentencing factors.

## II. SENTENCING CALCULATION

### A. Disputed Guideline Issues

First, Defendant objects to the PSR's assessment that a base offense level of 20 applies. PSR ¶ 228; Def.'s Objs. ¶ 5, ECF No. 669. The government agrees with Defendant that a base offense of 14 should apply. *See United States v. Davis*, 668 F.3d 576, 579 (8th Cir. 2012) (contemplating that the increased base offense level may not "in the unusual case where attaching the large capacity magazine rendered or would render the semiautomatic firearm inoperable").

Second, Defendant objects to the PSR's application of the four-level enhancement for possession of the firearm in connection with another felony offense. PSR ¶ 229; Def.'s Objs. ¶¶ 9, 11, 13 (citing PSR ¶¶ 134, 135, 203, 229). Defendant objects to the "suggestions" in several paragraphs of the PSR regarding his involvement with distributing drugs. Def.'s Objs. ¶¶ 1–8, 10, 13 (citing PSR ¶¶ 43, 52, 54, 90, 97, 99, 134–135, 170, 229).[1] Defendant objects to nearly every substantive paragraph involving him in the PSR.[2]

---

[1] Defendant objects to PSR paragraphs 43 and 52 through 54. These appear to be commentary in nature rather than objections to the facts. The government does not rely upon these paragraphs in proving the four-level enhancement.

[2] The Eighth Circuit has repeatedly recognized that these types of frivolous objections that are contrary to the evidence and can support denial for acceptance of responsibility. *See, e.g.*, *United States v. Goodson*, 920 F.3d 1209, 1212 (8th Cir. 2019) (" A defendant who 'falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility.'" (quoting USSG §3E1.1, n.1); *United States v. Godfrey*, 863 F.3d 1088,

The evidence indisputably shows that Defendant was a distributor of cocaine and crack cocaine. Defendant both received drugs from and supplied drugs to co-defendant Jerome Wilson. The government attaches eight exhibits—call transcripts and the supporting audio—and anticipates the testimony of a law enforcement officer to prove the four-level enhancement based on the disputed paragraphs (PSR ¶¶ 90, 97, 100, 134–35, 170) by a preponderance of the evidence.

On September 20, 2020, about three months after Johnson was released from state prison, agents intercepted a call between Wilson and a crack customer. PSR ¶ 90. The customer requested "40 cents," referring to $40 worth of crack cocaine, but she could not go anywhere to get it. Wilson said he could check if his "brother" could go over there. Immediately following the call, Wilson called Johnson. PSR ¶ 90; Gov't's Exs. 1 & 1A. Wilson asked Johnson if he has "some drop" (cocaine). Johnson responded that he's waiting on someone, who he identifies as "Styles" (Cory Turner) but confirms he does have some (cocaine). Wilson then told Johnson he had "a 40 thing" for him, referring to a $40 sale of crack cocaine. Johnson asked Wilson where at, and Wilson responded "Royal Oaks," referring to an apartment complex in Des Moines. Wilson then called the crack customer back and told her to give "him" (Johnson) a few minutes and he would be over there.

---

1096–99 (8th Cir. 2017) (affirming denial for acceptance of responsibility where the district court stated that "[a]lthough he may have pled guilty, the objections that he's made to the presentence investigation deny what I find to be relevant conduct and mischaracterize what happened"). The government requests the Court takes into account Defendant's lack of responsibility in granting the upward variance.

A few days later, on September 24, 2020, agents intercepted another call between Wilson and Johnson. PSR ¶ 97; Gov't's Exs. 2 & 2A. Johnson told Wilson that he was getting "it" (cocaine) from "4-5" (Coty Turner). He states he got "seven for four," meaning seven grams of cocaine for $400. Johnson then went on to talk about how he went from "that little seven to fourteen," a reference to making fourteen grams of crack cocaine out of seven grams of powder cocaine during the crack cooking process. Johnson was not only dealing drugs on Wilson's behalf, but was obtaining his own drugs for distribution.

A week later, on September 30, 2020, agents intercepted calls where Wilson directed customers to one of Johnson's residences—where Johnson's guns were located during the November 2020 search warrant. PSR ¶ 100. For several hours thereafter, Wilson directed his drug customers to Johnson's house.

On October 20, 2020, Wilson called Skyes (one of Johnson's girlfriends, PSR ¶ 276) and asked where Johnson was. PSR ¶ 134; Gov't's Exs. 3 & 3A. Skyes then relayed to Wilson what the was price for marijuana. Immediately after Wilson's call with Skyes, Johnson called Wilson. PSR ¶ 135; Gov't's Exs. 4 & 4A. Wilson asked Johnson if he had any "weed," Johnson responded he did, and Wilson asked Johnson to come to "21st" (Wilson's house). Surveillance observed Johnson leave Skyes's house and drive directly to Wilson's house to deliver Wilson drugs.

Additionally, on November 4, 2020, agents observed a short-term meeting in a Hy-Vee parking lot between Johnson and an unknown person driving a silver SUV.

PSR ¶ 170. Before and after, surveillance observed Johnson leave from and arrive back to his house, where the November 2020 search warrant occurred.

During the November 18, 2020 search warrant, law enforcement located Johnson at a house with two loaded .40 caliber semiautomatic pistols and a .40 caliber extended magazine on a shelf in a bedroom closet, along with a wallet containing Johnson's ID. In a dresser in that same bedroom, law enforcement located two packages containing 3.5 grams of marijuana, packaging materials, full and partial tablets marked "Xanax," and a digital scale. PSR ¶ 203.

These instances prove by at least a preponderance of the evidence that Defendant Johnson possessed the firearms in connection with another felony offense, namely distribution and possession with intent to distribute cocaine and cocaine base, and the four-level enhancement was properly applied.

### B.     Sentencing Guidelines Calculation

The government believes the advisory guidelines range in this case is as follows:

| | |
|---|---|
| USSG §2K2.1(a)(4)(B) (base): | 14 |
| USSG §2K2.1(b)(6)(B) (connection with felony) | +4 |
| USSG §3E1.1 (acceptance of responsibility): | −3 |
| Total Offense Level: | 15 |
| Criminal History Category | VI (17) |
| Guideline Sentencing Range: | 41–51 months |

### III.    SENTENCING FACTORS & GOVERNMENT'S RECOMMENDATION

The appropriate sentence to be imposed by the Court should be "sufficient but not greater than necessary" to meet relevant sentencing objectives, which include:

1. the nature and circumstances of the offense and history and characteristics of the defendant;
2. the need for the sentence imposed –
   A. to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
   B. to afford adequate deterrence to criminal conduct;
   C. to protect the public from further crimes of the defendant; and
   D. to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
3. the kinds of sentences available;
4. the guideline sentencing range;
5. any pertinent policy statement;
6. the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
7. the need to provide restitution to any victims of the offense.

*See* 18 U.S.C. § 3553(a). These factors support an upward variance to a sentence of 77-months' imprisonment.

As set forth above, Defendant was using and distributing cocaine and crack cocaine as part of a large-scale drug trafficking organization in Des Moines. Intrinsic to his drug trafficking activity, Defendant also possessed two guns and an extended magazine at his house. During the investigation, Defendant traveled to and from this house to distribute drugs and on at least one occasion allowed Wilson to deal drugs from this house.

Defendant's extended magazine is unaccounted for in the guidelines and is a basis for an upward variance. The extended magazine's presence next to guns it does not work with suggests Defendant likely possessed a third, unaccounted for gun. This

is especially likely to be true considering Defendant's repeated possession of guns as a felon. Defendant was not only a felon, but also a drug user when he possessed two guns and a magazine at his house where drug trafficking activity occurred.

Defendant's constant possession and use of guns is demonstrated by his serious and consistent criminal history. Defendant was convicted of his first felony at age 18. PSR ¶¶ 243–244. As part of that offense, Defendant shouted "Outlaw" (a reference to the criminal street gang he belongs to) out a car window, and exited the car with the driver, who drew a silver handgun from his waistband. *Id.* ¶¶ 243, 263. Defendant himself was later found with a loaded .25 caliber pistol in the pocket of his sweatshirt. *Id.* ¶ 244. When he was found with the gun, Defendant had an outstanding material witness warrant and, when he finally appeared for that deposition, later testified falsely about his Outlaw gang membership and the details of a June 2008 shooting. *Id.* ¶¶ 244, 245.

Defendant quickly lost the privilege of his suspended sentences when, in January 2010, he was arrested yet again with a gun, this time a loaded .38 caliber firearm with an obliterated serial number. PSR ¶ 247. Defendant was once more given a suspended sentence and while on parole he escaped and on a separate occasion ran from police. *Id.* ¶¶ 248–49.

Seven months after being released from jail, Defendant was found with yet another gun—a .45 caliber handgun—during a traffic stop with co-defendant Michael Teasley, who also had a gun. PSR ¶ 250. Defendant also had marijuana in his pants pocket. *Id.* While on parole for this offense, Defendant again escaped. *Id.* ¶ 251. He

was twice released and revoked until his sentence was discharged just 5 months before his arrest in this case. *Id.* ¶ 250.

During those 5 months, in October 2020, Defendant possessed yet another gun he used to shoot at and hit a victim in the leg. PSR ¶ 251a. Defendant has not been sentenced for this offense. *Id.* This conviction for a crime of violence—willful injury causing serious injury—would undoubtedly increase Defendant's base offense level to 20 and supports an upward variance to 77 months. *See* USSG §2K2.1(b)(4)(A); *United States v. Clark*, 1 F.4th 632, No. 20-1506, 2021 WL 2520648 (8th Cir. June 21, 2021), *United States v. Spratt*, 735 F. App'x 219, 220 (8th Cir. Aug. 23, 2018); *United States v. Maid*, 772 F.3d 1118, 1120 (8th Cir. 2014).

Defendant's conduct in this case, his repetitive criminal history, and his possession of guns repeatedly while a felon and a drug dealer show that he presents an unmitigated and unrelenting danger to the community. A significant sentence of 77 months is necessary to deter his criminal conduct and protect the public.

WHEREFORE, the government requests the Court consider this sentencing memorandum in determining the final sentence of Defendant.

    Respectfully submitted,

    Richard D. Westphal
    Acting United States Attorney

By:   */s/ MacKenzie Benson Tubbs*
    Mikaela J. Shotwell
    MacKenzie Benson Tubbs
    Assistant United States Attorneys
    U.S. Courthouse Annex
    110 East Court Avenue, Suite 286
    Des Moines, IA 50309
    Tel: (515) 473-9300
    Fax: (515) 473-9292
    Email: mackenzie.benson.tubbs@usdoj.gov

CERTIFICATE OF SERVICE
I hereby certify that on July 16, 2021, I electronically filed the foregoing with the Clerk of Court using the CM ECF system. I hereby certify that a copy of this document was served on the parties or attorneys of record by:
\_\_\_\_U.S. Mail \_\_\_\_ Fax \_\_\_Hand Delivery
\_X\_\_ECF/Electronic filing   \_\_\_Other means
ASSISTANT UNITED STATES ATTORNEY
By: */s/ MacKenzie Benson Tubbs*